IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIMBERLY WILSON,
Plaintiff,

3:10-cv-01195-PK

OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,
Defendant.

PAPAK, Magistrate Judge:

Plaintiff Kimberly Wilson challenges the Commissioner's decision denying her application for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Wilson asks the Court to reverse the Commissioner's decision and remand for an award of benefits or for further proceedings. The Court has jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, the Court affirms the Commissioner's decision.

Page 1 - OPINION AND ORDER

## BACKGROUND

Wilson filed separate applications for disability benefits and supplemental security income both in December 2006, alleging a disability onset in June 2003. Tr. 114, 117. After the Commissioner denied her application initially and upon reconsideration, Wilson requested a hearing before an administrative law judge (ALJ). *Id.* at 86-87. The ALJ held a hearing in October 2009 and took testimony from Wilson, her husband, and a vocational expert. *Id.* at 22-63. In November 2009, the ALJ issued a decision finding Wilson not disabled because she could perform the requirements of representative occupations such as housekeeper, small products assembler (I and II), and extruder machine operator[1]. *Id.* at 21.

The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920. *Id.* at 13-21. At step one, the ALJ found that Wilson had not engaged in substantial gainful activity during the period from her alleged onset date of June 30, 2003 through the date of the hearing. *Id.* at 13. At step two, the ALJ found that Wilson had the following severe combination of impairments: "dissociative disorder; methamphetamine dependence, remission, polysubstance abuse, migraine headaches; post traumatic stress disorder; seizure disorder; and status post 1999 aneurysm craniotomy." *Id.* At step three, the ALJ found that Wilson's impairments, or a combination of those impairments, did not meet or medically equal a listed impairment. *Id.* at 14-15. The ALJ found that Wilson had the residual functional capacity to perform light work, but had several nonexertional limitations. *Id.* at 15. Specifically, the AJL found that Wilson was limited to routine, unskilled work that has little public contact,

---

[1] Although the ALJ refers to this occupation as extruder machine operator, the official job title in the Dictionary of Occupational Titles is assembly machine tender. Hereinafter, I refer to the occupation as assembly machine tender to elimination confusion.

Page 2- OPINION AND ORDER

and a workplace "with seizure precautions (i.e., no workplace hazards)." *Id.* At step four, the ALJ found that Wilson had no past relevant work. *Id.* at 20. The ALJ concluded at step five that Wilson could perform jobs that exist in significant numbers in the national economy, and accordingly concluded that she was not disabled. *Id.* at 20-21.

The Appeals Council denied review of the ALJ's decision, making the ALJ's decision the Commissioner's final decision. *Id.* at 1-3. Wilson then filed this appeal in September 2010.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (citation omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If evidence supports more than one rational interpretation, the court upholds the Commissioner's decision. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038 (citation omitted).

Page 3- OPINION AND ORDER

## DISCUSSION

Wilson contends the ALJ erred in two respects. First, Wilson argues that the ALJ failed to include two of Wilson's limitations from the hypothetical posed to the Vocational Expert (VE). In particular, Wilson contends the ALJ's hypothetical failed to reflect the limitations that Wilson should have only "occasional co-worker interaction" and "no public contact" because of her history of anger issues and aggressive behavior. *See* Tr. 435. Second, Wilson argues that the ALJ erred by relying on VE testimony conflicting with the Dictionary of Occupational Titles (DOT) without sufficient explanation from the VE for that deviation. Specifically, Wilson challenges the ALJ's acceptance of VE testimony that a person restricted to an environment with "no workplace hazards" could still perform the occupations of small products assembler (I and II) and assembly machine tender, despite that these occupations involved contact with machinery. *See* Tr. 59-61.

### I.     Residual Functional Capacity Assessment

The residual functional capacity (RFC) assessment describes the work-related activities a claimant can still do on a sustained, regular and continuing basis, despite the functional limitations imposed by her impairments. 20 C.F.R. § 404.1545(e); S.S.R. No. 96-8p, 1996 SSR LEXIS 5, at *5 (July 2, 1996). The ALJ must reach the RFC assessment based on all the relevant evidence in the case record including medical records and the effects of symptoms that are reasonably attributed to a medically determinable impairment. *Robbins,* 466 F.3d at 883; SSR 96-8p, 1996 SSR LEXIS 5, at *14. The ALJ, however, need not incorporate limitations identified through testimony that the ALJ permissibly discounted. *Batson v. Comm'r Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004).

Page 4- OPINION AND ORDER

In step five, the Commissioner must show that the claimant can do other work that exists in the national economy. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Id.* The hypothetical posed to a vocational expert must only include those limitations supported by substantial evidence. *Robbins*, 466 F.3d at 886 (citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001)). "Conversely, an ALJ is not free to disregard properly supported limitations." *Id.*

### A.     Co-Worker Contact

Here, I find that the ALJ improperly omitted Wilson's limitation on co-worker interaction from his VE hypothetical. In his decision, the ALJ gave "significant weight" to the opinion of stage agency psychologist Bill Hennings, Ph.D., who completed a mental residual functional capacity assessment of Wilson in March 2007. Tr. 19. Indeed, the ALJ found Dr. Hennings' opinion to be "consistent with the objective medical evidence of record." *Id.* In that assessment, Dr. Hennings noted Wilson suffered a moderate limitation in her ability to get along with co-workers or peers, and consequently opined that Wilson should have only "occasional" co-worker interaction because of her history of anger issues and aggressive behavior.[2] Tr. 434-435. Despite that the ALJ incorporated in some form all of the other limitations identified by Dr.

---

[2] The record contains some evidence corroborating Dr. Hennings' concerns about Wilson's ability to interact with others. During a psychodiagnostic evaluation with Dr. Stephen Condon, Ph.D., in March 2007, Wilson reported that, in connection to her depression, she wanted to be left alone and preferred to remain in the basement where it was dark. Tr. 415. Wilson said she had gone into rages involving yelling, hitting walls, breaking things, and hitting her own head. *Id.* Although Dr. Condon's report did not describe any specific incident where Wilson directed her anger at other individuals, Dr. Condon noted that "[t]here has been behavior that is aggressive toward others...." Tr. 417.

Page 5- OPINION AND ORDER

Hennings into the VE hypothetical, he failed to include any limitation concerning interaction with co-workers. *Compare* Tr. 58-59 (VE hypothetical) *with* Tr. 435 (Dr. Hennings' Functional Capacity Assessment). Further, the ALJ did not offer any explanation for omitting the co-worker contact limitation. Nor do any of the ALJ's other factual findings justify that omission.[3] Finally, to the extent that Wilson's self-reported employment history might suggests she can safely interact with co-workers, I cannot affirm the agency's decision on that basis because the ALJ did not rely on it in his decision. *See* Tr. 165 (plaintiff's function report states that she had never been laid off for problems getting along with others in the workplace); Tr. 39-40 (plaintiff testifies that she left her job as a housekeeper in a hospital because of headache-induced absences and physical weakness, not conflict with co-workers); *Stout*, 454 F.3d at 1054 (reviewing court cannot affirm agency's decision on a ground the agency did not invoke in making its decision). In sum, the ALJ erred by omitting the limitation on co-worker contact from the hypothetical posed to the VE, since that limitation was properly supported by substantial evidence in the record, most notably the credited functional capacity assessment from Dr. Hennings. *See Robbins*, 466 F.3d at 886.

Nevertheless, the ALJ's error is harmless. Wilson argues that all four occupations found suitable by the VE and the ALJ involve significant co-worker interaction, and thus are inconsistent with the restriction described by Dr. Hennings that the ALJ erroneously omitted. I disagree. In a recent decision, the district court addressed the identical argument. *See Ackley v.*

---

[3] The ALJ found that Wilson attends weekly Narcotics Anonymous meetings and shops for groceries with her mother. Tr. 18. While these activities clearly involve an element of social interaction, they do not suggest that Wilson could sustain significant co-worker interaction on a daily basis.

*Astrue*, No. CV 10–185–SI, 2011 WL 4369119, at *6-7 (D. Or. Sept. 19, 2011). There, Judge Simon examined the DOT's narrative description of various occupations to determine whether those occupations were consistent with the plaintiff's limitation on co-worker interaction. *Id.* (holding that the DOT's descriptions for the occupations of laundry worker and warehouse worker were consistent with a requirement that plaintiff have only brief and indirect contact with co-workers). I employ the same analysis.

Here, the VE and the ALJ identified four different positions that Wilson could perform: cleaner, housekeeping (DOT 323.687-014); assembler, small products I (DOT 706.684-022); assembler, small products II (DOT 739.687-030); and assembly-machine tender (DOT 754.685-014). The DOT descriptions for these occupations indicate that only one – assembler, small products I – requires more than occasional co-worker interaction. *See* United States Department of Labor, Dictionary of Occupational Titles ("DOT") § 706.684-022 (4th ed.1991), *available at* www.occupationalinfo.org/contents.html (describing assembler, small products I, as position that "*[f]requently* works at bench as member of assembly group assembling on or two specific parts and passing unit to another worker") (emphasis added). The other occupation descriptions make no specific mention of co-worker interaction or group work, suggesting that any contact between co-workers is occasional, at most. Thus, even if the ALJ had properly included a limitation on co-worker interaction in the VE hypothetical, the ALJ would still have found Wilson able to perform three out of the four positions identified by the VE. The ALJ's error was therefore inconsequential to his final determination. *See Tommasetti*, 533 F.3d at 1038.

        **B.**        **Public Contact**

By contrast, I find that the ALJ did not err by failing to include an absolute limitation

Page 7- OPINION AND ORDER

on public contact in the VE hypothetical. Consistent with Dr. Hennings' observation that Wilson had marked limitations in interacting appropriately with the general public, Dr. Hennings concluded that Wilson should have "no public contact" because of her anger issues and aggressive behavior. Tr. 434, 435. Despite giving substantial weight to Dr. Hennings' opinion, the ALJ posed a hypothetical to the VE with the limitation of "little public contact" and ultimately formulated Wilson's RFC with the same limitation. Tr. 15, 58-59. Thus, the ALJ apparently rejected Dr. Hennings' opinion concerning the severity of Wilson's limitation on public contact and replaced it with a somewhat different limitation. *See Ackley*, 2011 WL 4369119 at *8 ("Minimal [public] interaction is not the same as no [public] interaction.")

Nevertheless, the ALJ's inclusion of the "little public contact" limitation in the VE hypothetical was supported by substantial evidence in the record. *See Robbins*, 466 F.3d at 886. Here, several of the ALJ's findings concerning Wilson's daily activities suggest Wilson could tolerate some limited public contact. *See Ackley*, 2011 WL 4369119 (discussing ALJ's findings concerning a claimant's activities of daily living in relation to RFC limitation on public contact). For example, the ALJ found that Wilson attends at least one NA meeting per week and goes grocery shopping with her mother. Tr. 18. The ALJ also noted that Wilson underwent two psychological evaluations since the alleged onset of her disability, with Dr. Condon in March 2007 and with Dr. Templeman in September 2007. Tr. 17. The ALJ also found that Wilson received mental health treatment in the community, including assessment, medication management, and individual therapy. Tr. 16-17. In addition to these findings, the record contains numerous references to Wilson venturing into public for AA and NA meetings, church, and mental health treatment. Tr. 34, 155, 163, 349-403, 490-491. Therefore, the ALJ did not err

Page 8- OPINION AND ORDER

by posing a hypothetical to the VE including the limitation of "little public contact."

Morever, even if the ALJ erred, his error would have been harmless. The only occupation of the four identified by the VE involving any public contact is housekeeper. DOT § No. 323.687-104 (housekeeper "renders personal assistance to patrons," among other duties). Even if the ALJ had posed a VE hypothetical including an absolute prohibition on public contact, only the housekeeper occupation would have been eliminated, as the ALJ's ultimate disability determination would remain unchanged.

**II.        Reliance on VE Testimony Inconsistent with Dictionary of Occupational Titles**

An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job "without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). SSR 00-4p requires the ALJ to first determine whether there is a conflict between the DOT and the vocational expert's testimony, and then "determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Massachi*, 486 F.3d at 1153. "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d 1428, 1435 (9th Cir. 1995).

Wilson argues that the ALJ improperly relied upon VE's testimony that conflicted with the DOT. Specifically, Wilson contends that three of the positions identified by the VE – assembler, small products I (DOT 706.684-022), assembler, small products II (DOT 739.687-030), and assembly-machine tender (DOT 754.685-014) – could not be performed by an individual with the no-hazard restriction included in the VE hypothetical. Wilson notes that the

Page 9- OPINION AND ORDER

assembler, small products I occupation involves "using handtools or portable powered tools" and contact with previously set-up machines. DOT § 706.684-022. Similarly, Wilson observes that the assembler, small products II occupation involves "using handtools, portable powered tools, or bench machines" and requires "fastening, force fitting, or light cutting operations, using machines such as arbor presses, punch presses, taps, spot-welding or riveters." DOT § 739.687-030. Finally, Wilson points out that the assembly-machine tender also works with machinery, positioning plastic objects "on [the] conveyor or turntable of hot-steam, flame cleaner, or stamping machines...." DOT § 754.685-014. Thus, Wilson contends that each occupation requires the worker's direct involvement with hazardous machines.

During the hearing, the VE testified that assembler, small products II position does not involve hazardous materials or contact with machinery because the position entails "just pushing things together." Tr. 61. The VE also implied that the assembler, small products I position similarly requires no contact with hazardous materials or machinery. *Id.* Finally, the VE testified that although the assembly-machine tender position involves some limited contact with a machine, the occupation does not require operation of the machine, which is set up by a technician and is highly computerized. Tr. 61-62. Rather, the VE testified that the position requires only opening the door of the machine and separating plastic dies from the molds in which they were created. *Id.* Thus, the VE apparently sought to explain why these three positions were still suitable for an individual with a no-hazard restriction, despite that the DOT states each of these occupations involves contact with some sort of machinery.

At the end of the hearing, the ALJ apparently recognized that the VE's testimony deviated somewhat from the DOT, although the ALJ did not clarify which aspects of the

Page 10- OPINION AND ORDER

testimony he found to be in conflict with the DOT. Tr. 62 (ALJ asks VE whether his testimony was consistent with the DOT "except where you've otherwise noted," to which the VE responds in the affirmative). Moreover, the ALJ clearly relied on the VE's testimony, even where it was inconsistent with the DOT, by finding that Wilson could perform the three manufacturing occupations identified by the VE. Tr. 21. The key question, therefore, is whether the record contains "persuasive evidence" to support the VE's deviation from the DOT, allowing the ALJ to properly rely on the VE's testimony rather than the DOT occupation descriptions. *See Massachi*, 486 F.3d at 1153; *Johnson*, 60 F.3d at 1435.

The record contains such persuasive evidence regarding the assembly-machine tender position, but not the other two manufacturing positions. According to SSR 00-4p, an ALJ may rely on VE testimony instead of DOT information when the VE testifies about an occupation not listed in the DOT or when the VE provides additional information about a particular job's requirements from reliable publications, from employers, or from the VE's experience in job placement or career counseling. S.S.R. No. 00-4p, 2000 WL 1898704, at *2-3 (Dec. 4, 2000). Here, the VE offered only minimal explanation about the nature of the two small products assembler positions and why they differed from the DOT descriptions, i.e., "[t]his [position] is just pushing things together." Tr. 61. The ALJ's decision to accept this cursory explanation for the conflict between the VE's testimony and the DOT is simply not reasonable. *See Massachi*, 486 F.3d at 1153. By contrast, the VE's testimony regarding the assembly machine tender position is much more detailed, indicating a greater familiarity with the position as it is implemented in the workplace. The VE describes the type of machinery used, the type of product manufactured, and the worker's responsibilities involving the machine and the product.

Therefore, the ALJ reasonably relied on the VE's explanation that the assembly machine tender position could be performed by an individual with a no-hazard restriction, even though the DOT description suggests otherwise.

Even though the ALJ erred in relying on the VE's testimony concerning the small products assembler positions, that error was harmless. The ALJ's finding that Wilson could perform work as an assembly machine tender adequately supports the ALJ's adverse disability finding. An individual is deemed disabled if she is unable to perform previous work or "any other kind of substantial gainful work which exists in the national economy" because of her impairments. 42 U.S.C. § 423(d)(2)(A). Work exists in the national economy when there are "a significant number of jobs (in one or more occupations) having requirements" which the claimant is able to meet with the claimant's abilities and vocational qualifications. 20 C.F.R. § 404.1566(b); 20 C.F.R. § 416.966(b). The Ninth Circuit has never clearly established a minimum number of jobs necessary to constitute a "significant number" for the purposes of this analysis. *Barker v. Sec'y of Health & Human Services*, 882 F.2d 1474, 1478 (9th Cir. 1989). Nevertheless, several Ninth Circuit cases have found that approximately one thousand jobs in the local area is a significant number. *See Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (1,300 jobs in Oregon significant); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (between 1,000 and 1,500 jobs in the local area significant); *Barker*, 882 F.2d at 1479 (1,266 jobs in region significant). Here, the VE testified that the assembly machine tender position had 2,000 jobs in the regional economy and 114,000 jobs in the national economy. Tr. 61. Thus, even if the ALJ only considered the assembly machine tender position, he still would have had substantial evidence to conclude at step five that Wilson could perform work existing in

Page 12- OPINION AND ORDER

significant numbers in the national economy.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is affirmed. A final judgment should be entered pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Dated this 11th day of October, 2011.

                              /s/ Paul Papak
                              Honorable Paul Papak
                              United States Magistrate Judge